UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| MAYKAYIA SMITH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00389-JPH-MJD |
| | ) | |
| K. ALVEY, | ) | |
| | ) | |
| Respondent. | ) | |

**Order Denying Petition for a Writ of Habeas Corpus
and Directing Entry of Final Judgment**

Indiana prison inmate Maykayia Smith petitions for a writ of habeas corpus challenging a prison disciplinary sanction imposed in disciplinary case number BTC 19-04-0321. For the reasons explained in this Order, Mr. Smith's habeas petition must be **denied**.

**A.     Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

1

### B.       The Disciplinary Proceeding

On April 20, 2019, Indiana Department of Correction (IDOC) Officer B. Stroud wrote a Report of Conduct charging Mr. Smith with rioting, a violation of the IDOC's Adult Disciplinary Code offense A-103. The Report of Conduct states:

> On 4/20/2019 at approximately 8:05pm B-Dorm Day room Branchville Correctional Facility, the above named offender was ID by staff and video surveillance as partaking in; Riot 103-A Encouraging, directing, commanding, coercing, or signaling, one (1) or more other persons to participate in a disturbance to facility order caused by a group of two (2) or more offenders, or participating in such a disturbance, or remaining in a group where some members of the group are participating in such a disturbance.

Dkts. 1-1 at 1 & 7-1.

Mr. Smith was notified of the charge on April 26, 2019, when he received the Screening Report. He pled not guilty to the charge, did not ask for witnesses, but asked for the video of the incident to be considered. Dkts. 1-1 at 2 & 7-2.

Pursuant to Mr. Smith's request for the video evidence to be considered, Officer T. Wise viewed the video on April 29, 2019. Officer Wise's Video Evidence Review report states:

> The video you requested has been reviewed. This video clearly shows that you are being directed to participate in the altercation that was the start of the Riot that occured [sic] in B-dorm dayroom.

Dkt. 7-5.

A hearing was held on April 29, 2019. Mr. Smith's statement was that he "did not participate in any of the situation" and "was going to speak with someone to let them know he was not part of anything." Dkts. 1-1 at 3 & 7-4. The hearing officer considered Mr. Smith's statement, the staff reports, the video recording, and an Investigations and Intelligence report (case number 18-BTC-058) and found "that it supports the charge of" rioting. *Id.* Based on Mr. Smith's statement

2

and the staff reports, the hearing officer found Mr. Smith guilty of rioting. The sanctions imposed included a 180-day earned-credit-time deprivation and a credit class demotion. *Id.*

Mr. Smith appealed to the Facility Head and the IDOC Final Reviewing Authority, but both appeals were denied. Dkts. 1-1 at 5-6 & 7-6, 7-7. He then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**C.     Analysis**

Mr. Smith presents three grounds for relief, each of which disputes the evidence against him and contends he did not participate in the riot. Dkt. 1 at 3-4. Because each ground challenges the evidence against him, the Court will construe Mr. Smith's grounds as a single assertion of insufficiency of the evidence.

Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d 271, 274 (7th Cir. 2016); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

At the disciplinary proceeding, and in his petition for habeas corpus and reply, Mr. Smith maintains that he did not participate in the fighting. He asserts that he was punched by another inmate, and that after being punched he immediately retreated to the side of the room and waited for officers to intervene. *See* dkts. 1, 7-4, & 13. While the video appears to show that Mr. Smith

was punched and then retreated as he claims, the charge against him encompasses more than that narrow sequence of events so the video is not the only relevant evidence.

Mr. Smith's arguments focus on the moment he was punched and what happened immediately thereafter. The Warden's position is that Mr. Smith's actions that led up to the riot/fighting is also evidence that supports the charge. Specifically, Mr. Smith encouraged, coerced, or signaled participation in the riot in violation of offense A-103 by remaining in the group of inmates rioting rather than leaving the room as most other inmates immediately did.

The hearing officer's decision was based on the video evidence just discussed.[1] The hearing officer's video review report clearly addressed actions leading up to the first punch, not events thereafter. The hearing officer's decision is also based in part on a review of a confidential Investigations and Intelligence report of the incident. A copy of the report has been filed *ex parte*. *See* dkt. 8.

This report asserts that prison officials were worried that a racially charged incident was imminent. A correctional officer was warned by an inmate that something was about to happen and could not be stopped, therefore the officer should be concerned for his safety. Officers noticed inmates segregating by race, and an unusual number were in places they were not supposed to be. In the dayroom where the riot took place, inmates clustered in racial groups. Dkt. 8.

Officer A. Falknor told investigators that "as soon as Smith #250543 caught up to [inmate] Wienhorst #125036 they exchanged words" and then Wienhorst struck Smith in the face and head

---

[1] The hearing officer also relied on the conduct report to decide the charge. Although conduct reports may indeed be "some evidence" to support a disciplinary charge, in some cases by themselves, the conduct report here cannot be considered "evidence." It is a mere regurgitation of offense A-103, with a conclusory introduction saying Mr. Smith was identified by staff as participating. The staff persons making the identification are not named, and the particular conduct necessary to violate offense A-103 is not specified. The conduct report here does not support the disciplinary charge, but neither does it suggest Mr. Smith's innocence.

area, beginning the riot. *Id.* at 3 & 9. Officer Falknor's statement to investigators is consistent with the video evidence. The video shows Mr. Smith and another inmate of a different race, likely Weinhorst, approaching each other from opposite directions, pausing and turning slightly, followed by Mr. Smith being struck.

Applying the "some evidence" standard explained above, the Court is unable to conclude that there was insufficient evidence to support the hearing officer's decision. There was "some evidence" in the video recording and the Investigations and Intelligence report. For these reasons, therefore, habeas corpus relief is **denied**. All pending motions, dkt. [14] (requesting status of case], and dkt. [16] (motion for court assistance), are **denied** as moot. This action is **dismissed** with prejudice.

### D.     Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Smith to the relief he seeks. Accordingly, Mr. Smith's petition for a writ of habeas corpus must be **denied** and the action **dismissed** with prejudice.

All pending motions, dkt. [14]; dkt. [16]; dkt. [17], are **denied** as moot. Final judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date: 7/27/2020

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Maykayia Smith
250543
Wabash Valley Correctional Facility - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
Carlisle, IN 47838

Natalie Faye Weiss
Indiana Attorney General
natalie.weiss@atg.in.gov